**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| COLETTE LOWRY, | ) |
| | ) Civil Action No. 2:20-cv-2009 |
| Plaintiff, | ) |
| | ) **JURY TRIAL DEMANDED** |
| v. | ) |
| | ) |
| UPMC Passavant, | ) |
| | ) |
| Defendant. | ) |

**CIVIL COMPLAINT**

**I. Jurisdiction**

1. The Jurisdiction of this Court is invoked pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C.§ 2617, and 28 U.S.C. §§ 1331 and 1343(a)(4).

2. Plaintiff has satisfied all the procedural and administrative requirements set forth in that Plaintiff timely filed this Complaint in Federal Court within two years of the last known violating action.

**II. The Parties**

3. Plaintiff, Colette Lowry ("Lowry"), is an adult individual who resides at 1061 Fiddleback Drive, McKees Rocks, PA 15136. She is an eligible employee within the meaning of 29 U.S.C.§ 2611(2)(A), because she worked at least 12 months for Defendant, and worked more than 1,250 hours during the applicable 12-month period.

4. Defendant UPMC Passavant ("Passavant") is a non-profit corporation organized under Pennsylvania law.  Defendant has a primary place of business at 9100 Babcock Boulevard, Pittsburgh, PA 15237. At all times relevant to this action, Defendant was Lowry's employer and is an Employer within the meaning of the FMLA, 29 U.S.C. § 2611(4)(A)(i),

because it employed more than 50 employees between 2016 and 2018.

### III. Factual Background

5.  Lowry was hired by Defendant as a Registered Nurse ("RN") at UPMC Passavant Hospital in or around 2014.

6.  At the time she was hired, Lowry had over 36 years of nursing experience.

7.  As an RN, she enjoyed her job, assisting daily with patients, and she never received disciplinary action or negative performance reviews.

8.  In or around the year 2000, Lowry was diagnosed with the autoimmune rheumatic disease, scleroderma and Raynaud's Syndrome.

9.  Lowry suffers regularly from severe joint pain and reduced physical mobility caused by the scleroderma and Raynaud's Syndrome and she regularly visits specialized physicians to manage her disease.

10. In or about 2016, Lowry noticed significantly increased pain in her wrist, and she was compelled to wear a wrist brace at work.

11. In or about 2017, a new manager, Sherry Gardner "Gardner", replaced Lowry's previous supervisor.

12. Lowry's previous supervisor had no issue with the wrist brace she wore during work and Lowry believed Gardner would allow for the same.

13. In or about 2017, Gardner informed Lowry that she could not wear the wrist brace while working, even though she was previously made aware of Lowry's painful disease.

14. Gardner had complained Lowry was "too slow" working with the patients, and because she was required to work without her wrist brace, Lowry was subjected to greater and increased physical pain.

15. Lowry discussed her physical limitations with Gardner on multiple occasions and in the Spring of 2018, Lowry had a verbal conversation with Human Resources ("HR") to discuss her potential options.

16. HR and Gardner never followed-up with Lowry regarding any potential workplace accommodations or medical leave.

17. Lowry continued to suffer from pain caused by her scleroderma and not being allowed to wear her brace while at work.

18. In the Fall of 2018, Lowry reached out to UPMC's Work Partners program to discuss her leave options.

19. Work Partners informed Lowry that they believed she was physically "unable to perform her job" and they would not permit wearing a wrist brace.

20. Work Partners did not discuss any other options with Lowry; however, following their conversation, Lowry requested Family Medical Leave Act ("FMLA") and it was approved.

21. Lowry's physician recommended accommodations because Lowry suffered from extreme joint pain in her hands, which affected typing and inserting intravenous needles.

22. Lowry was physically able to continue to work, but after she was refused accommodations she opted to take FMLA leave to run concurrently with short-term disability.

23. On December 20, 2018, Gardner called Lowry to remind her that her return-to-work date was December 24, 2018.

24. Between December 24 and December 27, 2018, Lowry was disciplined for allegedly improperly "locking" two patients, while another RN received no disciplinary action for nearly identical actions.

25. On December 27, 2018, Gardner called Lowry and informed her that she was not

permitted to go into work that day and offered no explanation.

26. The next day, December 28, 2018, Lowry received a letter in the mail terminating her employment for alleged "unsafe practices."

27. Defendant blatantly retaliated against Lowry due to her taking FMLA for her serious medical condition when Defendant terminated Lowry.

## Count I:
## Family and Medical Leave Act: Interference

28. Plaintiff incorporates by reference the allegations in paragraphs 1 through 27 as if fully restated herein.

29. Defendant failed to advise Plaintiff of her rights under the FMLA and ultimately interfered with her rights by firing her in violation of 29 U.S.C. § 2615(a)(2).

30. Defendant's violation of the FMLA was willful.

31. As a direct and proximate result of Defendant's violations of the FMLA, Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost wages, benefits and seniority.

WHEREFORE, Plaintiff hereby requests judgment, pursuant to 29 U.S.C. § 2617(a), and the following legal and equitable remedies:

    a. Defendant be ordered to employ and re-employ Plaintiff in the position from which she was discharged, together with all benefits incident thereto, including but not limited to, wages, benefits, training, and seniority;

    b. Defendant be required to compensate Plaintiff for full value of wages and benefits that Plaintiff would have received had it not been for Defendant's

      illegal treatment of Plaintiff, with interest at the prevailing rate thereon until the date Plaintiff is offered re-employment in a position substantially equivalent to the one Plaintiff occupied prior to December 28, 2018;

c.   Defendant be required to provide Plaintiff all other compensation, including but not limited to lost stock options, bonuses, 401k and profit sharing, which was denied or lost to Plaintiff as a result of Defendant's illegal treatment of Plaintiff;

d.   That a final judgment in favor of Plaintiff and against Defendant be entered for Plaintiff for liquidated damages, as provided by 29 U.S.C.§ 2617(a)(1)(A)(iii), in an amount equal to the wages, benefits, and other compensation denied or lost to Plaintiff;

e.   That Defendant be enjoined from discriminating against Plaintiff in any manner that violates the FMLA;

f.   That Plaintiff be awarded against Defendant the costs and expenses of this litigation and a reasonable attorneys' fee; and

g.   That Plaintiff be granted such further legal and equitable relief as the Court may deem just and proper.

## Count II:
### Family and Medical Leave Act: Retaliation

32. Plaintiff incorporates by reference the allegations in paragraphs 1 through 31 as if fully restated herein.

33. Defendant falsely alleged Plaintiff conducted "unsafe practices" and terminated Plaintiff four days after Plaintiff returned to work from FMLA leave, in violation of 29 U.S.C.

§ 2615(a)(2).

34. Defendant terminated Plaintiff because she engaged in protected activity under the FMLA, specifically Defendant terminated Plaintiff because she took FMLA protected leave.

35. Defendant's violation of the FMLA was willful.

36. As a direct and proximate result of Defendant's violations of the FMLA, Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost wages, benefits and seniority.

WHEREFORE, Plaintiff hereby requests judgment, pursuant to 29 U.S.C. § 2617(a), and the following legal and equitable remedies:

   a. Defendant be ordered to employ and re-employ Plaintiff in the position from which she was discharged, together with all benefits incident thereto, including but not limited to, wages, benefits, training, and seniority;

   b. Defendant be required to compensate Plaintiff for full value of wages and benefits that Plaintiff would have received had it not been for Defendant's illegal treatment of Plaintiff, with interest at the prevailing rate thereon until the date Plaintiff is offered re-employment in a position substantially equivalent to the one Plaintiff occupied prior to December 28, 2018;

   c. Defendant be required to provide Plaintiff all other compensation, including but not limited to lost stock options, bonuses, 401k and profit sharing, which was denied or lost to Plaintiff as a result of Defendant's illegal treatment of Plaintiff;

  d.  That a final judgment in favor of Plaintiff and against Defendant be entered for Plaintiff for liquidated damages, as provided by 29 U.S.C.§ 2617(a)(1)(A)(iii), in an amount equal to the wages, benefits, and other compensation denied or lost to Plaintiff;

  e.  That Defendant be enjoined from discriminating against Plaintiff in any manner that violates the FMLA;

  f.  That Plaintiff be awarded against Defendant the costs and expenses of this litigation and a reasonable attorneys' fee; and

  g.  That Plaintiff be granted such further legal and equitable relief as the Court may deem just and proper.

                Respectfully submitted,

                **EDGAR SNYDER & ASSOCIATES**

                /s/ Ryan M. Carroll, Esq.
                Ryan M. Carroll
                PA I.D. No. 205851
                rcarroll@edgarsnyder.com
                US STEEL TOWER, 10TH FLOOR
                600 GRANT STREET
                PITTSBURGH, PA 15219
                TELEPHONE: (412) 394-4496
                FACSIMILE: (412) 391-7032
                *Attorney for Plaintiff*